# Exhibit 4

PETER SHUMLIN
Governor



State of Vermont
OFFICE OF THE GOVERNOR

September 29, 2014

Patricia Moulton, Secretary
Agency of Commerce & Community Development
One National Life Drive
Dean C. Davis Building, 6th Floor
Montpelier, VT  05620

Susan Donegan, Commissioner
Department of Financial Regulation
89 Main Street
Montpelier, VT  05620

Dear Secretary Moulton and Commissioner Donegan,

As you both know – much to the credit of the Agency of Commerce and Community Development – the volume of EB-5 business in Vermont has grown significantly since ACCD was first recognized as Vermont's EB-5 Regional Center in 1997 under Governor Howard Dean.

As the volume and complexity of EB-5 projects in Vermont have grown, so too have the demands of administering the Regional Center.  Over the years, ACCD has sought and received approval to amend its regional center designation with U.S. Citizenship and Immigration Services to allow for approval of EB-5 projects in ever-widening economic sectors.  The Vermont EB-5 Regional Center officially includes the ACCD Secretary as the principal representative, and ACCD General Counsel as a principal administrator along with one staff person from the Department of Economic Development as another principal administrator.  Presently, legal services for the Regional Center are primarily performed by ACCD General Counsel, who has significant other responsibilities for all other aspects of ACCD.

To address the increased demands that have resulted from the growth of EB-5 business in Vermont, I ask that your Agency and Department work together to explore sharing staff and resources in administering our Regional Center.  My hope is that the securities and financial expertise of DFR staff can assist ACCD with the growing volume of work necessary to fulfill the Regional Center's mission, including review of potential projects, offerings, potential investors and securities records.

I fully expect that the financial expertise of staff at DFR, coupled with ACCD's track-record of improved job creation in Vermont, will further enhance Vermont's existing reputation of having one of the most-qualified and best-managed Regional Centers in the country.

USAO-EB500019279

Thank you and your staff for your work and your attention to this matter.  I look forward to your recommendations.

Sincerely,

Peter Shumlin
Governor

USAO-EB500019280

## MEMORANDUM OF UNDERSTANDING

## BETWEEN

## STATE OF VERMONT
## AGENCY OF COMMERCE AND COMMUNITY DEVELOPMENT

## AND

## STATE OF VERMONT
## DEPARTMENT OF FINANCIAL REGULATION

This Memorandum of Understanding ("Agreement") is made and entered into on December 22, 2014, by and between:

State of Vermont Agency of Commerce and Community Development, and its successors and assigns ("ACCD"), and

State of Vermont Department of Financial Regulation, and its successors and assigns ("DFR").

## WHEREAS

ACCD, a governmental unit of the State of Vermont, is charged with enhancing the Vermont business climate; marketing Vermont to businesses and individuals; and facilitating, promoting, and creating business opportunities within Vermont to contribute to the economic viability and growth of the state;

DFR, a governmental unit of the State of Vermont, is statutorily charged with supervising organizations that offer financial services and products to ensure the solvency, liquidity, stability and efficiency of all such organizations; protecting consumers against certain unfair and unlawful business practices; promoting reasonable and orderly competition; encouraging the development, expansion and availability of financial services and products advantageous to the public welfare; and maintaining close cooperation with other supervisory authorities ("DFR's Mission");

ACCD is an approved and designated Regional Center recognized by the U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services ("USCIS") in accordance with the Immigrant Investor Pilot Program pursuant to section 203(b)(5) of the Immigration and Nationality Act, as amended, the Departments of Commerce, Justice and State, the Judiciary, and Related Agencies Appropriations Act of 1993, Pub. L. No. 102-395, section 610, as amended, and all applicable regulations promulgated thereunder, (collectively, the "Pilot Program law");

1

USAO-EB500019350

Initial designation as a Regional Center was made in a letter dated June 26, 1997, to Howard Dean, M.D., Governor of the State of Vermont from legacy U.S. Immigration and Naturalization Service (INS), informing him of the ACCD's designation as a Regional Center; reaffirmation of ACCD's Regional Center was given by USCIS in a letter dated June 11, 2007 to Kevin L. Dorn, secretary of ACCD; and the ACCD Regional Center designation was amended and approved for EB-5 investment across a wider range of business sectors by USCIS in a letter dated October 6, 2009 to Kevin L. Dorn, secretary of ACCD;

As a USCIS approved and designated Regional Center within the Immigrant Investor Pilot Program, ACCD is responsible for: (i) actively marketing and promoting the Regional Center as an attractive option for development and foreign investment ("Marketing Activities"); (ii) approving developments that apply for designation as a Regional Center project ("Project Approval"); and (iii) on-going monitoring of approved Regional Center projects to assure compliance with USCIS EB-5 regulations, U.S. immigration laws and regulations and federal and state securities laws ("On-Going Compliance");

ACCD has the personnel, capacity and expertise to effectively carry out the Marketing Activities, and believes the Regional Center would benefit operationally, and obtain a competitive advantage by enlisting the assistance of personnel, capacity and expertise of DFR to carry out the Project Approval and On-Going Compliance functions;

DFR has agreed to assist ACCD in carrying out the Project Approval and On-Going Compliance functions as these functions are within DFR's Mission and DFR has the available resources to effectively carry out these functions; and

**NOW, THEREFORE**, in consideration of the mutual agreements, and representations set forth herein, the parties agree as follows:

1. Relationship with USCIS.

    a. ACCD shall retain all reporting responsibilities with USCIS including: (i) remaining the principle point of contact with USCIS on all Regional Center matters; and (ii) maintaining responsibility for the annual completion and filing of the Form I-924A.

    b. ACCD Secretary shall remain a Principal Representative and DFR Commissioner shall be added as a Principal Representative.

    c. ACCD General Counsel and EB-5 Regional Center Director shall remain the Principal Administrators.

2

USAO-EB500019351

    d. DFR shall cooperate in assisting ACCD with fulfilling its USCIS reporting obligations by providing or obtaining information within its control.

2. Marketing Activities.

    a. ACCD shall conduct all Marketing Activities and fulfill any USCIS requirements pertaining to the promotion of the Regional Center.

    b. DFR shall assist ACCD with Marketing Activities when requested and if feasible.

    c. Any marketing materials that describe DFR and/or DFR's Regional Center functions shall be approved by both ACCD and DFR prior to dissemination.

3. Project Approval.

    a. Upon learning of a prospective Regional Center project, ACCD shall promptly inform DFR and as soon as practical obtain a completed preliminary due diligence questionnaire (to be provided by DFR) from the principals of the prospective Regional Center project.

    b. ACCD shall promptly forward all materials related to a project seeking Regional Center approval to DFR for review and consideration.

    c. DFR shall review the application for compliance with USCIS EB-5 regulations, U.S. immigration laws and regulations and federal and state securities laws and make a final determination to approve or deny the application.

    d. If an application is approved, than ACCD and DFR shall work with the project's principals to develop a memorandum of understanding that will govern the parties' relationship through completion of the project (the "Project MOU").

4. On-Going Compliance.

    a. DFR shall be responsible for conducting On-Going Compliance of an approved project. Such On-Going Compliance shall include, but not be limited to:

        i. Quarterly visits to project sites to monitor and verify the representations made by the project's principals regarding the development;

3

USAO-EB500019352

ii.  On-going monitoring of Project to ensure compliance with MOU covenants;

iii.  Regularly scheduled meetings with project principals regarding updating on the progress of the development;

iv.  Compiling the name, date of birth, petition receipt number, and alien registration number (if one has been assigned by USCIS) of each principal alien investor who has made an investment and has filed an I-526 Petition with USCIS, specifying whether: (i) the petition was filed; (ii) approved; (iii) denied; or (iv) withdrawn by the petitioner, together with the date(s) of such event(s);

v.  Compiling the total number of visas represented in each case for the participating principal alien investor identified, plus his/her dependents (spouse and children) for whom immigrant status is sought or has been granted;

vi.  Compiling the country of nationality of each alien investor who has made an investment and filed an I-526 petition with USCIS;

vii.  Compiling the U.S. city and state of residence (or intended residence) of each alien investor who has made an investment and filed an I-526 petition with USCIS;

viii.  Compiling the following information for each alien investor: (i) the date(s) of deposit(s) into escrow; (ii) date(s) of investment(s) in the commercial enterprise; (iii) the amount(s) of investment(s) in the commercial enterprise; and (iv) the date(s), nature, and amount(s) of any payment/remuneration/profit/return on investment made to alien investors by the new commercial enterprise and/or project from when the investment was initiated to the present;

ix.  Compiling a list of each of the target industry categories of business activity within the Vermont EB-5 Regional Center that have received alien investors' capital, and in what aggregate amounts;

x.  Compiling a list of each of the target industry categories of business activity within the geographic boundaries of the Vermont EB-5 Regional Center that have received non-EB-5 domestic capital that has been combined and invested together, specifying the separate aggregate amounts of domestic investment capital;

xi.  Compiling the following information for the total investor capital (alien and domestic), identifying: (i) the name and address of each

4

USAO-EB500019353

"direct" job creating commercial enterprise; (ii) the industry category for each indirect job creating investment activity;

xii. Compiling the total aggregate number of approved EB-5 alien investor I-526 petitions per each federal fiscal year to date made through the Vermont EB-5 Regional Center;

xiii. Compiling the total aggregate number of approved EB-5 alien investor I-829 petitions per each federal fiscal year to date through the Vermont EB-5 Regional Center; and

xiv. Compiling the total aggregate sum of EB-5 alien capital invested through Regional Center for each federal fiscal year to date since your inception.

5. <u>Communication between ACCD and DFR</u>.

   a. ACCD and DFR agree to conduct meetings, either in person or by telephone/teleconference, not less frequently than every three months commencing on the Effective Date ("<u>Quarterly Meetings</u>").

   b. ACCD and DFR agree to promptly inform the other if one has knowledge of a material change to a project application, and/or suspicious activity, potential or actual securities violation(s), or fraud specific to a project or any activities related to the Regional Center.

   c. DFR shall employ best efforts to inform ACCD of the time and date of the project quarterly visits and ACCD may attend DFR scheduled quarterly visits if it so chooses.

6. <u>Investor Relations and Formal Complaints</u>.

   a. ACCD shall be responsible for fielding and responding to inquiries from investors or prospective investors or their respective attorneys.

   b. DFR shall provide ACCD with a complaint form that investors may use to lodge a formal complaint against a project or its principals.

   c. Upon receiving a completed formal complaint, ACCD shall promptly forward the complaint to DFR.

   d. DFR shall be solely responsible for investigating the complaint's allegations and determining whether such allegations warrant the filing of administrative or civil charges and/or referral of the matter to another regulatory or law enforcement agency.

5

USAO-EB500019354

7. Revoking a Project's Regional Center Designation.

    a. DFR shall make the final determination, after required notice to the project and discussion with ACCD, as to whether a project's MOU should be revoked due to non-compliance with the Project MOU, USCIS EB-5 regulations, U.S. immigration laws and regulations and federal and state securities laws.

8. Communication between media outlets and ACCD and DFR.

    a. If ACCD or DFR receives a request for comment or information from a media outlet regarding the operations of the Regional Center, the party receiving such a request shall confer with the other party before providing comment or information.

    b. If ACCD or DFR receives an interview request from a media outlet regarding the operations of the Regional Center, a representative from both ACCD and DFR shall participate, if possible.

9. Fees and Cost of the Regional Center.

    a. ACCD and DFR shall develop a fee schedule that is due from a Regional Center project to offset the costs of the Regional Center; such fee schedule shall balance the competitiveness of the EB-5 program with the financial burden of operating the Regional Center; such fee schedule shall be re-examined by ACCD and DFR on the anniversary of the Effective Date.

    b. DFR shall be solely responsible for the expense of DFR Regional Center personnel, both current and to-be-hired, charged with carrying out Project Approval and On-Going Compliance functions commencing on the Effective Date through fiscal year 2016.

    c. DFR's reasonable travel, third party vender and third party professional expenses relating to the operation of the Regional Center shall be reimbursed by ACCD through Regional Center fees.

    d. Notice filing fees due to DFR under state and federal securities laws shall be separate and apart from EB-5 fee schedule and DFR shall retain all such fees.

10. Approval by USCIS.

    a. ACCD shall use its best efforts to have this Agreement approved by USCIS and effectuate any necessary amendments to the current Regional Center designation.

6

USAO-EB500019355

    b.  DFR shall cooperate with ACCD to obtain USCIS approval and effectuate the necessary Regional Center designation amendments.

    c.  Effectiveness of this Agreement is subject to and conditioned upon approval by USCIS (the "Effective Date").

11. Miscellaneous.

    a.  Immigration Filings. DFR shall not have any obligations or responsibilities as to I-526, I-829, I-924, I-924A, G-28 or other USCIS required filings.

    b.  Regulatory & Law Enforcement Communications. Communications with another regulatory or law enforcement agency shall be fielded by DFR. DFR shall update ACCD Principal Representative and Principal Administrators unless otherwise prohibited by law.

    c.  Term. This Agreement in its present form or as modified shall be effective as of the Effective Date and shall remain in effect for two years. This Agreement may be extended by the mutual written agreement of the parties. Prior to the expiration of the agreement the parties shall meet to negotiate and execute a successor agreement. In the event a successor agreement is not in place when this agreement is due to expire, this agreement will remain in effect until a successor agreement is concluded.

    d.  Modification. During the term of the Agreement, either party that is a signatory to this Agreement may submit a written request to amend or modify this memorandum. When such a request is made, the parties shall meet without unnecessary delay to consider the proposed amendment.

    e.  Change in Law. Any provision in this Agreement may be rendered null and void by changes in federal or state law that prevent either or both parties from fulfilling the terms of the agreement. If this circumstance should arise, each party agrees to promptly notify the other party.

    f.  Choice of Law. This Agreement shall be governed by and interpreted in accordance with the laws of the State of Vermont.

*[Remainder of Page Intentionally Left Blank]*

7

USAO-EB500019356

The parties have executed this Agreement in duplicate originals as of the date of their signatures affixed below.

> **State of Vermont**
> **Agency of Commerce and Community Development**
>
> Dated: _10/22/14_
>
> _Patricia M___
> Patricia Moulton, Secretary
>
> **State of Vermont**
> **Department of Financial Regulation**
>
> Dated: _12/22/14_
>
> _Susan L. Donegan_
> Susan L. Donegan, Commissioner

8

USAO-EB500019357