# Exhibit 39

**From:** Cassetty, Dave [Dave.Cassetty@vermont.gov]
**Sent:** Tuesday, April 05, 2016 12:17 PM
**To:** Kline, Scot; London, Sarah
**Subject:** Q Burke affidavits
**Attachments:** Affidavit Clean.docx; Affidavit CleanQ Burke.docx

Here are 2 drafts, one Mike did which omits any substantive evidence from Q Burke, and a more robust one.

STATE OF VERMONT

WASHINGTON COUNTY, SS

SUSAN L. DONEGAN, IN HER )
OFFICAL CAPACITY AS )
COMMISSIONER OF THE )
VERMONT DEPARTMENT OF )
FINANCIAL REGULATION and )

STATE OF VERMONT
ATTORNEY GENERAL
WILLIAM H. SORRELL )
)
Plaintiffs, )
)
v. )   Washington County
)   Docket No. _____
Ariel Quiros; William Stenger; )
William Kelly; Jay Peak Hotel Suites L.P.; )
Jay Peak Hotel Suites Phase II L.P.; )
Jay Peak Penthouse Suites L.P.; Jay Peak )
Golf and Mountain Suites L.P.; Jay Peak )
Lodge and Townhouses L.P.; Jay Peak Hotel )
Suites Stateside L.P.; Jay Peak Biomedical )
Research Park L.P.; and Q Burke )
Mountain Resort, Hotel Conference )
Center L.P.; Jay Construction Management )
Inc.; Jay Peak Management Inc.; )
Jay Peak GP Services Inc.; Jay Peak GP )
Services Lodge Inc.; Jay Peak GP Services )
Golf Inc.; Jay Peak GP Services Stateside )
Inc.; Q Burke Mountain Resort GP Services )
LLC; AnC Bio Vermont GP Services LLC )

Defendants.

**AFFIDAVIT OF**—————————

I, _____, having been duly sworn, submit the following affidavit in support of the Commissioner of the Vermont Department of Financial Regulation's Motion for the appointment of a conservator for the accounts, assets and business affairs of Q Burke Mountain Hotel Resort and Conference Center L.P. ("Q Burke L.P."):

1. I am over the age of 21, and I am employed by_____.(responsibilities)
2. I have personal knowledge of the matters set forth herein.

**EB-5 Overview**

3. Each Defendant limited partnership is part of the Employment Based, Fifth Preference Immigrant investor visa program ("EB-5 Program"). Under the EB-5 Program, foreign nationals may qualify for permanent residency if they invest at least $500,000 in a U.S. "Targeted Employment Area," defined as a high unemployment or rural area, in a commercial enterprise which creates or preserves a certain number of full-time jobs for U.S. workers. The Defendant limited partnerships' EB-5 projects are all located in a targeted employment area.

4. Through the EB-5 Program, cities, states and private entities may apply to the United States Citizenship and Immigration Services ("USCIS") for approval as a "Regional Center," which allows the entity to affiliate with or create a "new commercial enterprise" which can accept investments from foreign nationals.

5. The Vermont Agency of Commerce and Community Development ("ACCD") has been approved as a regional center to provide support to partnered EB-5 projects within Vermont pursuant to Memoranda of Understanding between the projects and the Vermont ACCD Regional Center.

**Overview of Jay Peak EB-5 Projects**

6. Since 2008, individual Defendants Quiros and Stenger, through their control of the eight Defendant limited partnerships, orchestrated a large-scale investment scheme to defraud EB-5 investors by making false representations and diverting money for personal gain and to cover up the misuse of project funds.

7. The first six limited partnerships involved real estate-related projects at Jay Peak Resort, the seventh limited partnership involved the construction of a biomedical facility in the City of Newport, Vermont, and the eighth and final limited partnership involved real estate-related projects at the Q Burke Mountain Resort. Construction has been completed for the first five limited partnerships' projects, while construction on the last three limited partnerships' projects remains ongoing.

8. Each limited partnership offering is governed by the terms of a legally binding securities offering document known as a Private Placement Memorandum ("PPM"). Each PPM requires investors to execute a subscription agreement and contribute $500,000 of capital along with a $50,000 administrative fee. Further, each PPM represents the amount that Defendants Stenger and Quiros will contribute to the project, and specifically details how the capital contributions will be spent.

**Q Burke L.P. Misrepresentation**

9. Q Burke L.P. involved a $98 million dollar offering, which combined with the $6.7 million contribution from the Q Burke Mountain Resort, LLC – an entity owned by Quiros, would construct a hotel and conference center, an aquatic center, a tennis facility and a mountain bike park.

10. The Q Burke L.P. PPM provides that the Q Burke Mountain Resort, LLC will receive ownership of two commercial units within the hotel and conference center, but the Q Burke

Mountain Resort, LLC will pay for the build out of the commercial space. The original Q Burke PPM identified the cost of the commercial build out to be $3,155,000.

11. As of January 31, 2016, Q Burke L.P. had raised approximately $57 million from 114 investors.

12. As of March 1, 2016, construction is complete on the hotel and conference center and certificates of occupancy have been issued; however, due to lack of payment, the general contractor has retained possession of the certificates of occupancy and the hotel and conference center have yet to be opened to the public.

13. Based on my review of the construction contract for the Q Burke hotel and conference center, construction invoices, payments made and payment applications submitted to the State of Vermont, contrary to the representations in the PPM, the Q Burke Mountain Resort has failed to pay any portion of the commercial build out and instead used, or plans to use, investor funds to cover such cost.

**SEC Temporary Restraining Order**

14. On April [ ], 2016, the United States Securities and Exchange Commission ("SEC") obtained a temporary restraining order from a federal court in the Southern District of Florida against Stenger and Quiros and each limited partnership defendant except Q Burke L.P., which was not included in the SEC's action. , The temporary restraining order, among other things, froze the defendants' assets, removed control of the EB-5 entities from Stenger and Quiros and barred Stenger and Quiros from promoting, offering or selling EB-5 related securities or operating EB-5 related projects.

15. The general partner for Q Burke L.P. is Q Burke Mountain Resort GP Services LLC whose sole members are Stenger and Qurios. Accordingly, due to the SEC's bar, the general partner

limited liability company is without members who can act on behalf of the limited partnership.

FURTHER THE AFFIANT SAYETH NOT

Signed under penalty of perjury this _____ day of _____ 2016

Date:_____                               _____

                              Subscribed and sworn before me this _____ day of _____ 2016

                              _____

                              Notary Public

                              My commission expires:_____

## STATE OF VERMONT

## WASHINGTON COUNTY, SS

SUSAN L. DONEGAN, IN HER )
OFFICAL CAPACITY AS )
COMMISSIONER OF THE )
VERMONT DEPARTMENT OF )
FINANCIAL REGULATION and

STATE OF VERMONT
ATTORNEY GENERAL
WILLIAM H. SORRELL )
)
    Plaintiffs, )
)
v. )    **Washington County**
)    **Docket No. _____**
Ariel Quiros; William Stenger; )
William Kelly; Jay Peak Hotel Suites L.P.; )
Jay Peak Hotel Suites Phase II L.P.; )
Jay Peak Penthouse Suites L.P.; Jay Peak )
Golf and Mountain Suites L.P.; Jay Peak )
Lodge and Townhouses L.P.; Jay Peak Hotel)
Suites Stateside L.P.; Jay Peak Biomedical )
Research Park L.P.; and Q Burke )
Mountain Resort, Hotel Conference )
Center L.P.; Jay Peak Inc Q Resorts Inc. )
Jay Peak Management Inc.; )
Jay Peak GP Services Inc.; Jay Peak GP )
Services Lodge Inc.; Jay Peak GP Services )
Golf Inc.; Jay Peak GP Services Stateside )
Inc.; Q Burke Mountain Resort GP Services )
LLC; AnC Bio Vermont GP Services LLC )

    Defendants.

**AFFIDAVIT OF**_____

I, _____, having been duly sworn, submit the following affidavit in support of the Commissioner of the Vermont Department of Financial Regulation's Motion for the appointment of a conservator for the accounts, assets and business affairs of Q Burke Mountain Hotel Resort and Conference Center L.P. ("Q Burke L.P."):

1. I am over the age of 21, and I am employed by _____.(responsibilities)
2. I have personal knowledge of the matters set forth herein.

**EB-5 Overview**

3. Each Defendant limited partnership is part of the Employment Based, Fifth Preference Immigrant investor visa program ("EB-5 Program"). Under the EB-5 Program, foreign nationals may qualify for permanent residency if they invest at least $500,000 in a U.S. "Targeted Employment Area," defined as a high unemployment or rural area, in a commercial enterprise which creates or preserves a certain number of full-time jobs for U.S. workers. The Defendant limited partnerships' EB-5 projects are all located in a targeted employment area.

4. Through the EB-5 Program, cities, states and private entities may apply to the United States Citizenship and Immigration Services ("USCIS") for approval as a "Regional Center," which allows the entity to affiliate with or create a "new commercial enterprise" which can accept investments from foreign nationals.

5. The Vermont Agency of Commerce and Community Development ("ACCD") has been approved as a regional center to provide support to partnered EB-5 projects within Vermont pursuant to Memoranda of Understanding between the projects and the Vermont ACCD Regional Center.

**Overview of Jay Peak EB-5 Projects**

6. Since 2008, individual Defendants Quiros and Stenger, through their control of the eight Defendant limited partnerships, orchestrated a large-scale investment scheme to defraud EB-5 investors by making false representations and diverting money for personal gain and to cover up the misuse of project funds.

7. The first six limited partnerships involved real estate-related projects at Jay Peak Resort, the seventh limited partnership involved the construction of a biomedical facility in the City of Newport, Vermont, and the eighth and final limited partnership involved real estate-related projects at the Q Burke Mountain Resort. Construction has been completed for the first five limited partnerships' projects, while construction on the last three limited partnerships' projects remains ongoing.

8. Each limited partnership offering is governed by the terms of a legally binding securities offering document known as a Private Placement Memorandum ("PPM"). Each PPM requires investors to execute a subscription agreement and contribute $500,000 of capital along with a $50,000 administrative fee. Further, each PPM represents the amount that Defendants Stenger and Quiros will contribute to the project, and specifically details how the capital contributions will be spent.

**Q Burke L.P. Misrepresentation**

9. Q Burke L.P. involved a $98 million dollar offering, which combined with the $6.7 million contribution from the Q Burke Mountain Resort, LLC – an entity owned by Quiros, would construct a hotel and conference center, an aquatic center, a tennis facility and a mountain bike park.

10. The Q Burke L.P. PPM provides that the Q Burke Mountain Resort, LLC will receive ownership of two commercial units within the hotel and conference center, but the Q Burke

Mountain Resort, LLC will pay for the build out of the commercial space. The original Q Burke PPM identified the cost of the commercial build out to be $3,155,000. Q Burke Mountain Resort LLC has not paid any of the commercial build out cost to date.

11. Instead of simply paying Q Burke project expenses, investor funds were used as follows: $1,213,626 was used to pay for project expenses of Lodge and Townhouses and Stateside; at least $4,887,000 was used to secure a personal line of credit for Quiros, and additional sums were used to repay debt incurred through margin accounts held in the name of other projects.

12. The Q Burke LP held numerous financial accounts, including: 1) an escrow account at People's United Bank; 2) a brokerage account at Raymond James; 3) a checking account at Merrill Lynch; 4) a checking account at Citibank; and 5) a checking account at People's United Bank.

13. Quiros and Stenger used a system of multiple bank accounts to disguise their fraudulent scheme and to commingle investor funds from multiple projects. For example, the funds used to acquire the Q Burke hotel property came from Jay Peak Biomedical investor funds laundered through multiple bank accounts.

14. As of January 31, 2016, Q Burke L.P. had raised approximately $57 million from 114 investors.

15. As of March 1, 2016, construction is complete on the hotel and conference center and certificates of occupancy have been issued; however, due to lack of payment, the general contractor has retained possession of the certificates of occupancy, and the hotel and conference center have yet to be opened to the public.

16. Based on my review of the construction contract for the Q Burke hotel and conference center, construction invoices, payments made and payment applications submitted to the State of Vermont, contrary to the representations in the PPM, the Q Burke Mountain Resort has failed to pay any portion of the commercial build out and instead used, or plans to use, investor funds to cover such cost.

17. Outstanding invoices remain unpaid from November 2015, and several liens have been placed on the hotel property. The Q Burke LP lacks sufficient funds either to pay outstanding invoices or to complete the auxiliary portions of the project.

**SEC Temporary Restraining Order**

18. On April [ ], 2016, the United States Securities and Exchange Commission ("SEC") obtained a temporary restraining order from a federal court in the Southern District of Florida( the Federal order) against Stenger and Quiros and each limited partnership defendant except Q Burke L.P., which was not included in the SEC's action. The Federal Order, among other things, froze the defendants' assets, removed control of the EB-5 entities from Stenger and Quiros and barred Stenger and Quiros from promoting, offering or selling EB-5 related securities or operating EB-5 related projects.

19. The general partner for Q Burke L.P. is Q Burke Mountain Resort GP Services LLC whose sole members are Stenger and Qurios. Accordingly, due to the SEC's bar, the general partner limited liability company is without members who can act on behalf of the limited partnership.

20. Following the entry of the Federal Order, the Q Burke L.P. is the only one of the defendant EB-5 projects not under the supervision and control of a receiver or conservator.

FURTHER THE AFFIANT SAYETH NOT

Signed under penalty of perjury this _____ day of _____ 2016

Date:_____                              _____

                    Subscribed and sworn before me this _____ day of _____ 2016


                    _____
                    Notary Public

                    My commission expires:_____