UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2023 MAY 15  PM 2: 10

CLERK

BY_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 5:19-cr-76-4 |
| | ) | |
| WILLIAM STENGER, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON PETITION FOR WRIT OF CORAM NOBIS
### (Doc. 470)

Defendant William Stenger has filed a motion under 28 U.S.C. § 1651 asking the court to

grant relief under a writ of coram nobis and to strike the $250,000 restitution order imposed as

part of the judgment in this case. (Doc. 470.) The Government opposes the petition (Doc. 471)

and Mr. Stenger has filed a reply (Doc. 472). The court denies the petition for the reasons stated

below.

### Background

In May 2019, William Stenger was indicted on multiple counts of conspiracy (Count 1),

wire fraud (Counts 2–7) and making a false statement (Counts 10, 13 and 14). In August 2021,

Mr. Stenger pled guilty to Count 14—a charge of making a false statement in violation of

18 U.S.C. § 1001. At the change-of-plea hearing, counsel for both sides requested an

opportunity to present extensive evidence concerning the scope of relevant conduct at the

sentencing hearing. (Tr. of 8/6/21 hr'g, Doc. 6 at 12.) The court agreed to this procedure and

scheduled a two-week hearing in October 2021. (Doc. 358.) In preparation for the hearing, the

Government filed a comprehensive memorandum supported by 207 exhibits drawn from the

voluminous documentation of the Jay Peak/AnC Bio fraud. (Doc. 372.)

On October 4, 2021, the parties filed a "Joint Stipulation Regarding Relevant Conduct." (Doc. 384.) Both sides agreed that the evidentiary hearing was no longer necessary. The Government agreed that it would not rely on portions of its sentencing memorandum concerning conduct before 2011 and adjusted language about the absence of an audit in 2012. Mr. Stenger agreed "that he will not dispute or object to the facts set forth in the remainder of the [Government's] Brief." (Doc. 384.)

The sentencing hearing occurred on April 24, 2022. The only area of dispute between the parties (other than the length of the sentence) was the issue of restitution. Count 14 concerned a false written statement by Mr. Stenger to a state regulator concerning the generation of new jobs through the AnC Bio project. The statement was dated January 9, 2015. The Government's claim for restitution addressed losses by 36 investors who invested in the project after the date of the false statement. Each victim has already been repaid the principal amount of their investment ($500,000) by a financial institution which provided services to Mr. Quiros and the AnC Bio entities. The remaining loss is the administrative fee of approximately $50,000 which each investor paid to AnC Bio as a condition of participating in the EB-5 program. The undisputed amount of this loss was $1,664,928. (Sentencing Tr., Doc. 445 at 14.)

At the sentencing hearing, the defense called Susan Donegan, former Commissioner of the Vermont Department of Financial Regulation ("DFR"), as a witness. Commissioner Donegan testified that in summer 2014, Secretary of Commerce and Community Development Moulton placed a hold on the sale of EB-5 investments in the AnC Bio and Burke Hotel projects while state regulators reviewed the project. DFR conducted a review during the spring of 2015. In March 2015, Commissioner Donegan attended a meeting with the governor and the principals in AnC Bio. The principals advocated for an end to the hold on the investments.

2

In April 2015, Commissioner Donegan lifted the hold, approving the resumption of sales of the investment subject to conditions negotiated with counsel for AnC Bio and the Burke Hotel project. DFR's investigation of potential fraud continued, leading to the drafting of a civil enforcement complaint in June 2015. The complaint was never filed, and sales of the Anc Bio investment continued until the SEC filed a civil complaint in 2016. On cross-examination Commissioner Donegan testified that Mr. Stenger's statement to her about future job creation—the false statement alleged in Count 14 of the indictment—was material to her decision to release the hold on the AnC Bio investment. (Doc. 445 at 68–69.)[1]

At the sentencing hearing, defense counsel denied that Mr. Stenger's statement in January 2015 was a proximate cause of the investors' loss. The defense argued that the state regulators' decision to reopen the marketing of the AnC Bio private placement investments in spring 2015 was the only proximate cause of the loss. The defense sought to pin responsibility for the investor's loss on the actions of the state regulators. "[The defense] position is that the Count 14 statements made in January of 2015 . . . are not the proximate cause of [the victims'] loss, and it is a technical legal issue." (Doc. 445 at 16.) The Government disagreed, stating:

> Our position is that the [pre-sentence report] makes clear that Mr. Stenger's misrepresentations in January were related to job creation and that whatever the [Department of Financial Regulation] or the State's concerns about where the money was going, a totally independent reason that this project got approved was the defendant's misstatements to the regulators to get the PPM, the Private Placement Memorandum, approved and that was based on these lies.

(Doc. 445 at 20.)

---

[1] The details of the false employment projections go back to false job figures originally developed by Mr. Stenger in 2012 that were supplied to the Agency of Commerce and Community Development in a consultant's report in 2014 and endorsed by Mr. Stenger in a letter to Ms. Donegan in January 2015. (Doc.

On this record, the court rejected Mr. Stenger's contention that the sole proximate cause
of the investors' loss was the decision by DFR to allow marketing of the AnC Bio to resume in
April 2015. The court concluded that "the proximate cause link is there between the false
statements, the false assurances in the January letter and the decision of the agency to allow the
investment to come back on the market." (Doc. 445 at 101.) The court accepted for purposes of
argument the truth of Mr. Stenger's argument that

> there were sufficient . . . red flags and warning signs that the regulatory agency and
> the State should not have allowed the investment to be marketed again in April of
> 2015 and, had that permission not been granted, these 36 people would not have
> become involved in the fraudulent investment.

(Doc. 445 at 101.) Relying on the principles identified in *United States v. Calderon*, 944 F.3d 72
(2d Cir. 2019), the court ruled that the false statement to which Mr. Stenger admitted at the time
of his guilty plea was a sufficient proximate cause to support a restitution order even if there
were other causes at play. (Doc. 445 at 103.) The court reduced the restitution amount from
\$1.6 million in light of Mr. Stenger's limited work capacity and health restrictions and ordered
restitution in the amount of \$250,000. There was no appeal.

## ANALYSIS

The writ of coram nobis developed in the English common law courts of the 16th century
as a means of correcting "errors of fact not appearing on the record that would have precluded
the court's judgment had the court known of the error when it rendered judgment." Brendan W.
Randall, *Comment: United States v. Cooper: The writ of Error Coram Nobis and the Morgan
Footnote Paradox*, 74 Minn. L. Rev. 1063, 1066 (1990). The writ entered American law through
operation of the all-writs section of the Judiciary Act of 1789 that continues to preserve the
traditional writs in federal practice. 28 U.S.C. § 1651(a). In *United States v. Morgan*, 346 U.S.
502 (1954), the Supreme Court approved the continued viability of coram nobis in criminal

cases, holding that the remedy permits the correction of fundamental errors in a criminal judgment when appeal or collateral review through 28 U.S.C. § 2255 are not available.[2]

In considering a motion for relief in the manner of coram nobis, the court presumes that the prior proceedings were correct. The defendant bears the burden of proving:

- That extraordinary circumstances are present compelling such action to correct a fundamental error; and

- Sound reasons exists for failure to seek appropriate earlier relief.

*Nicks v. United States*, 955 F.2d 161 (2d Cir. 1992); *United States v. Foont*, 93 F.3d 76 (2d Cir. 1996). In this case, the claim falls short of both standards.

There is no showing of extraordinary circumstances. At the sentencing hearing, Mr. Stenger sought to demonstrate to the court that he was the unwitting victim of Mr. Quiros and the state regulators. The court disagreed with his position and included a restitution obligation in the final judgment, creating an opportunity for him to seek relief on appeal. He chose not to appeal—effectively conceding that there was no error in the sentence or at least none that he was prepared to pursue.

Mr. Stenger does not claim that he was denied any procedural rights in the course of the sentencing. He continues to take a different view of the facts than the court regarding the harm caused by the crime to which he pled guilty. At sentencing, the court was aided by the sentencing memorandum filed by the Government. Mr. Stenger stipulated that "for purposes of

---

[2] As noted above, there was no appeal in this case. Mr. Stenger cannot rely on § 2255 to challenge the restitution order because a collateral attack under that section is limited to a "claimed right of relief from 'custody.'" *Al- 'Owhali v. United States*, 36 F.4th 461, 467 (2d Cir. 2022) (quoting *Duka v. United States*, 27 F.4th 189, 195 (3d Cir. 2022)). Relief from a restitution order cannot itself serve as a basis for collateral relief. *Id.*

[Mr.] Stenger's sentencing, the Court may rely on the facts alleged in the Government's Brief Regarding William Stenger's Relevant Conduct" with exceptions not relevant here. (Doc. 384.)

The Government's memorandum devotes almost 30 pages to a searching analysis of Mr. Stenger's role in developing and forwarding false estimates of job creation based on false estimates of revenue and other indicators of future success. (Doc. 372 at 9–38.) These false estimates culminated in his January 9, 2015 letter to ACCD Commissioner Moulton. (Doc. 372-49.) The memorandum's account of Mr. Stenger's conduct supports the court's sentencing decision that the false statement was itself a proximate cause of the investors' loss because an honest appraisal of the prospects of the AnC Bio enterprise would have shown that the enterprise was a fraud that could not generate revenue or create new jobs in the future. That the court ruled against Mr. Stenger on this issue after a contested sentencing hearing does not qualify as a fundamental error in his sentence.

There is also no showing that the late discovery of two documents concerning the DFR investigation presents issues that excuse the defendant from raising the issue previously. The coram nobis petition identifies two newly discovered documents concerning the growing concern among state regulators in 2015 that AnC Bio and related projects might be corrupt. The Government has provided a discovery log that demonstrates that the documents were turned over to the defense on three separate occasions beginning in the summer of 2019. In its reply, the defense states that although counsel received the documents, it did not appreciate their relevance. "Had they found those memos, defense counsel would have brought these memos to the attention of the Court in their Memorandum Re: Restitution, Doc. 421, and offered them as exhibits at the sentencing hearing." (Doc. 472 at 5.)

6

Despite overlooking the two documents, defense counsel presented the same claim at sentencing as here. In their view, the state regulators are primarily responsible for the loss of the investors' money because they allowed the sales to resume in the spring of 2016. The court did not agree with this position at sentencing and continues to disagree today. The evidence continues to support the conclusion that Mr. Stenger made a material false statement to DFR that played a significant role in DFR's decision to permit the resumption of sales of the fraudulent investment.

Because Mr. Stenger pled guilty to the false statement count, 18 U.S.C. § 3663 governs the restitution claim. (His co-defendants were subject to the mandatory restitution requirements of § 3663A.) Section 3663(a)(2) of Title 18 defines a victim for restitution purposes as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." This causation standard is the same as the standard that appears in 18 U.S.C. § 3663A(a)(2) and applied by the Second Circuit in the *Calderon* decision.

*Calderon* follows multiple appellate decisions in recognizing that "[t]he central goal of a proximate cause requirement is to limit the defendant's liability to the kinds of harm he risked by his conduct, the idea being that if a resulting harm was too far outside the risks his conduct created, it would be unjust or impractical to impose liability." *Id.*, 944 F.3d at 95. In the area of investment loss, a restitution order is permissible at sentencing "if the risk that caused the loss was within the zone of risk concealed by the misrepresentations and omissions alleged by a disappointed investor." *United States v. Marino*, 654 F.3d 310, 321 (2d Cir. 2011). The relevant risk in this case was that the Anc Bio investments might fail to qualify for regulatory approval, thus jeopardizing the entire scheme. Mr. Stenger pled guilty to making a false statement about future job creation—a critical requirement for the state regulators. In contrast to *Calderon*, in

7

which the false statements had little causal connection to the loss, his statement was material to the regulators' decision to permit the sale of the investments to resume. There were certainly other causes for the spectacular failure of the Anc Bio investments, including the misuse of investor funds and the absence of customers or products for the proposed research facility, but the existence of these other causes does not relieve Mr. Stenger from liability under 18 U.S.C. § 3663.

## Conclusion

The defendant has failed to meet his burden of demonstrating extraordinary circumstances leading to a fundamental error in the prior criminal proceedings. The information on which he relies to justify the timing of his motion more than a year after the sentencing hearing has been in his attorneys' possession for more than three years. The issues which he seeks to raise were also raised at the sentencing hearing itself. For these reasons, the court DENIES the petition for writ of coram nobis. (Doc. 470).

Dated at Burlington, in the District of Vermont, this 15th day of May, 2023.

Geoffrey W. Crawford, Chief Judge
United States District Court

8